48 F.3d 1234
NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
 YAMAJI FISHING NET CO., Plaintiff-Appellant,
v.
The UNITED STATES, Defendant-Appellee.
 No. 94-1147.
 United States Court of Appeals, Federal Circuit.
 Jan. 25, 1995.
Rehearing Denied March 22, 1995.
 
 CIT, 830 F.Supp. 1502.
 AFFIRMED.
 Before CLEVENGER, Circuit Judge, COWEN, Senior Circuit Judge, and SCHALL, Circuit Judge.
 CLEVENGER, Circuit Judge.
 
 
 1
 Yamaji Fishing Net Company, Ltd. (Yamaji) appeals from the August 23, 1993 judgment of the Court of International Trade affirming the calculation of a 18.3% ad valorem dumping margin applicable to Yamaji, based on "best information available." Yamaji Fishing Net Co. v. United States, 830 F.Supp. 1502 (Ct.Int'l Trade 1993). We affirm.
 
 
 2
 * Yamaji manufactures in Japan fishing net made from man-made fibers. In 1972, the U.S. Department of the Treasury issued an antidumping order covering such nets. Fish Netting of Manmade Fibers From Japan, 37 Fed.Reg. 11,560 (1972). In connection with the fourth administrative review of the antidumping order, the U.S. Department of Commerce on August 5, 1986 issued to Yamaji a standard questionnaire, seeking information from Yamaji in order to calculate an appropriate dumping margin. The questionnaire expressly requested information on the viability of the home market and information necessary to make an adjustment for physical differences between the home market and the United States market merchandise. In addition, the questionnaire stated: "[w]e will not accept handwritten questionnaire responses.... You must submit all data concerning transactions subject to this review on computer tapes in accordance with our formats."
 
 
 3
 Yamaji submitted a response to the questionnaire in handwritten form but provided no information on the requested home market and adjustment for physical differences subjects. On November 15, 1990, Commerce sent a deficiency letter to Yamaji emphatically reminding it of the need to submit data in a specified computer format and a deficiency/supplemental questionnaire, which, inter alia, expressly requested information regarding home market viability and physical characteristics of the merchandise. The deficiency letter concluded with the following stern warning:
 
 
 4
 As you were previously informed by the Department, any information submitted after the due date and/or not received in the format requested (including the requested computer format), may not be considered in our preliminary results. In such cases, we may have to use the best information otherwise available as required by section 776(b) of the Tariff Act of 1930, as amended, in making our determination.
 
 
 5
 In response to the November 15, 1990 deficiency letter, Yamaji wrote that Commerce's request was "impracticable" because Yamaji did not have a computer and "it costs us considerable expense to execute your request...." Yamaji did not explain why the two missing categories of information were not submitted in response to the November 15 questionnaire.
 
 
 6
 Because Yamaji failed to provide the requested data in the specified computer format and failed to supply requested information in two categories, Commerce resorted to best information available to calculate Yamaji's dumping margin. Preliminary Results of Antidumping Duty Administrative Reviews and Intent to Revoke in Part: Fishnetting of Man-made Fibers From Japan, 56 Fed.Reg. 33,246, 33,247 (July 19, 1991) (Preliminary Determination). Commerce considered Yamaji's failure to supply data in the computer tape format and Yamaji's failure to provide home market and physical difference information to be two separate and independent grounds for resorting to the best information available. Yamaji did not submit a brief in response to the Preliminary Determination.
 
 
 7
 In due course, Commerce published its final determination noting Yamaji's "failure to respond to [Commerce's] requests for additional information and [its] failure to respond to certain requests in the form required." Final Results of Antidumping Duty Administrative Reviews: Fishnetting of Man-Made Fibers From Japan, 56 Fed.Reg. 49,456, 49,457 (Sept. 30, 1991) (Final Determination). Commerce consequently assigned Yamaji a best information available dumping margin of 18.3% ad valorem, which was based on the highest margin for Yamaji from any previous review. Id.
 
 II
 
 8
 Yamaji brought suit in the Court of International Trade challenging Commerce's assessment of the best information available dumping margin. Yamaji moved for judgment on the record that Commerce's action was unlawful and sought a remand to the agency for submission of additional information or determination of a new best information available margin. In its brief in support of the motion, Yamaji conceded that Commerce had rejected its information submissions and resorted to best information available for two independent reasons: lack of any submission on the home market and adjustment for differences subjects and failure to submit data in the specified computer format. Yamaji, however, pitched its legal argument solely in terms of whether Commerce's requirement for submission of data in a specified computer format was lawful as applied to Yamaji, who viewed Commerce's requirements as "impracticable."
 
 
 9
 The government's memorandum in opposition to Yamaji's motion also noted that two grounds were relied upon by Commerce in resorting to best information available. In response to the tenor of Yamaji's memorandum in support of its motion, the government's opposition memorandum addressed the reasons in support of the legality of the computer format requirement. Yamaji filed a reply brief in response to the government's opposition. In the reply brief, Yamaji noted that Commerce asserted two grounds for justification of the use of best information available and that "[the government's] arguments in its brief are focused only on the matter of compliance with the computer tape issue." On the last page of its reply brief, Yamaji presented its only challenge to Commerce's employment of best information available because of Yamaji's failure to supply the home market and physical differences information. Yamaji argued that Commerce had a duty to advise Yamaji that its submissions were insufficient for failure to submit information on the two categories specifically requested in the initial and supplemental questionnaires.
 
 
 10
 The opinion of the Court of International Trade noted that Commerce had resorted to best information available on two grounds: failure to submit certain information at all, and failure to submit information in the required computer format. 830 F.Supp. at 1504. In response to Yamaji's argument that Commerce had a duty to notify it of the deficiencies in its submissions, the court held that Commerce in its deficiency letter had notified Yamaji of its shortcomings and provided it with an opportunity to remedy them. 803 F.Supp. at 1509. The bulk of the court's opinion addressed and rejected Yamaji's argument that the computer format requirement was unlawful as applied to Yamaji in this case.
 
 III
 
 11
 On appeal to this court, Yamaji primarily argues that it was unlawful for Commerce to require it to submit data in a specified computer format. Yamaji only briefly challenges the authority of Commerce to resort to best information available in this case because of Yamaji's failure to have submitted any data at all in two carefully defined categories. Yamaji argues, as it did below, that Commerce failed to notify Yamaji that its submission was deficient with respect to the home market and physical differences information. This argument must fail. The deficiency/supplemental questionnaire accompanying the November 15, 1990 notice of deficiency expressly requested such information.
 
 
 12
 Thus, since we uphold one of Commerce's independent grounds for resorting to best information available in calculating Yamaji's dumping margin, we need not reach the issue concerning the computer tape format requirement. The judgment of the Court of International Trade is therefore affirmed.